# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAMONT DAVIS, NAKEA BLOUNT, and SHAMIKKAH SLAUGHTER, on behalf of themselves and all other persons similarly situated, known and unknown, </br></br>Plaintiffs,</br></br>v.</br></br>HEARTLAND EMPLOYMENT SERVICES, LLC,</br></br>Defendant. | Case No. 1:19-cv-00680</br></br>Judge Valderrama |

## PLAINTIFFS' MOTION AND MEMORANDUM OF LAW FOR ATTORNEY FEES, LITIGATION COSTS, SETTLEMENT ADMINISTRATION COSTS, AND SERVICE AWARDS

Douglas M. Werman
dwerman@flsalaw.com
Zachary C. Flowerree
zflowerree@flsalaw.com
**WERMAN SALAS P.C.**
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Tel: (312) 419-1008
Fax: (312) 419-1025

David Fish
dfish@fishlawfirm.com
Mara Baltabols
mara@fishlawfirm.com
**FISH POTTER BOLAÑOS, P.C.**
200 East 5th Avenue, Suite 123
Naperville, IL 60563
Tel: (630) 355-7590

*Attorneys for Plaintiffs*
*and Settlement Class Members*

I.   **Introduction**

On May 18, 2021, this Court granted preliminary approval of the Parties' $5,418,000 non-reversionary class action Settlement under the Biometric Information Privacy Act ("BIPA").[1] With 30 days to go before the deadline, over 30 percent of Settlement Class Members have already returned claim forms to request payment. To date, not a single Settlement Class Member has objected to the Settlement or requested exclusion from it. The high claims rate and lack of objections and exclusions underscore the strength of the Settlement. The excellent Settlement supports awarding Settlement Class Counsel one-third of the Gross Fund as attorney fees and litigation costs of $28,249.66. The Settlement also supports awarding the Settlement Administrator its costs of $56,670 and the three Class Representatives their Service Awards of $10,000 each.

II.   **Legal Background and Procedural History** (Ex. 1, Settlement Agreement, § I.)[2]

In 2008, Illinois enacted BIPA to regulate "the collection, use, safeguarding, handling, storage, retention, and destruction" of individuals' biometric data. 740 ILCS 14/5(g). The Illinois General Assembly found that the new legislation was necessary for several reasons. First, individuals cannot change their biologically unique identifiers, like fingerprints, and so they have no recourse when those identifiers are compromised. 740 ILCS 14/5(c). Second, an "overwhelming majority" of the public are concerned about use of biometric data tied to finances and other personal information. 740 ILCS 14/5(d). Third, the "full ramifications of biometric technology are not yet fully known." 740 ILCS 14/5(f). BIPA addresses these concerns, in part, by creating a privacy interest in a person's biometric data and giving individuals the right to control

---

[1]   Capitalized terms not defined here are defined in the Parties' Settlement Agreement, which is attached here as Exhibit 1.

[2]   When feasible, citations are in the headings to avoid unnecessary multiplication of in-text citations.

when a private entity collects that data. *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶¶ 34-35 (Ill. 2019).

Among other things, BIPA prohibits a private entity from collecting a person's biometric data unless the entity first informs the person, in writing: (1) that it is collecting biometric data; (2) the purpose of the collection; and (3) how long the private entity will keep the person's biometric data. 740 ILCS 14/15(b). The private entity must also obtain the individual's "written release" authorizing collection of the biometric data. *Id.* BIPA further regulates a private entity's possession, storage, and disclosure of biometric data. 741 ILCS 14/15(a), (c), (d), and (e). Private entities face liquidated or actual damages, whichever are higher, for negligent and reckless/intentional violations of the law. 740 ILCS 14/20.

This lawsuit alleges that Defendant collected its employees biometric data through a fingerprint scan timekeeping system without informing them in writing that it was doing so, without identifying the purpose of the collection, without identifying how long it would retain their data, and without obtaining their informed written consent. 740 ILCS 14/15(b). The lawsuit further alleges that Defendant stored employees' biometric data without establishing and following a biometric data retention and destruction policy, which requires a private entity like Defendant to destroy biometric data once the purpose for collection is complete. 740 ILCS 14/15(a). Finally, the lawsuit alleges that Defendant disclosed employees' biometric data to its timekeeping vendor without consent. 740 ILCS 14/15(d).

The Parties reached a Settlement after an unsuccessful mediation with retired Magistrate Judge Morton Denlow, extensive written discovery, document production, third-party discovery, retention of consulting experts, and depositions of five party witnesses.

**III. Settlement Class Counsel Negotiated a Highly Favorable Settlement Structure, Robust Notice Program, and Effective Claims Process** (Ex. 2, Flowerree Decl. ¶¶ 12-14)

Settlement Class Counsel negotiated a claims structure that equally distributes the full amount of the Net Fund to Settlement Class Participants without any money reverting back to the Defendant. If the Court approves all elements of this Settlement and there is a 35 percent claims rate, the net payments will be over $900 to each Settlement Class Participant. If there is a 40 percent claims rate, the net payments will be nearly $800 to each Settlement Class Participant.

The structure that Settlement Class Counsel negotiated here is superior to alternatives approved in other BIPA class action settlements. For example, some settlement structures arbitrarily cap the amount that claimants can receive, regardless of the number of claims submitted. *See, e.g., Zhirovetskiy v. Zayo Group, LLC*, 17-CH-9323 (Cir. Ct. Cook Cnty.) (capping claimants' maximum recovery in BIPA settlement at $400); *Rafidia v. KeyMe, Inc.*, 18-CH-11240 (Cir. Ct. Cook Cnty.) (capping claimants' recovery in BIPA settlement at $515). Other settlement structures only require a defendant to pay for claims submitted and allow a defendant to retain unclaimed funds. *See, e.g., Marshall v. Life Time Fitness, Inc.*, 17-CH-14262 (Cir. Ct. Cook Cnty.) (limiting the defendant's funding obligations toward the settlement class to payment of "Approved Claims"). By contrast, this Settlement requires Heartland to fund the full $5,418,000 Gross Fund – without any conditional funding or potential reversion – and then requires the full Net Fund to be distributed to claimants. Simply put, Settlement Class Counsel negotiated the most favorable claims structure possible for Settlement Class Members.

And Settlement Class Counsel paired this favorable claims structure with a robust notice program and claim filing process to maximize the number of Settlement Class Members who submit claims. Many BIPA class settlements provide notice to class members by direct mail, only. By contrast, here Settlement Class Counsel negotiated three forms of notice: direct mail, email

3

(when possible), and text message (when possible). And the email and text message notices include one reminder for Settlement Class Members who have not yet returned claims within 30 days of the deadline. Settlement Class Counsel likewise negotiated multiple avenues for Settlement Class Members to return claim forms: via a pre-paid mailing envelope or electronically through the case website. The results to date confirm the effectiveness of the notice program and claim process: approximately 31.4 percent of Settlement Class Members have returned valid claim forms. Ex. 3, Declaration of Due Diligence, ¶ 10. Already, this far exceeds the median claims rate of 9 percent in a recent study of class action settlements. See Federal Trade Commission, Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns, p. 11 (Sept. 2019), available here. Likewise, the claims rate here far exceeds the approximately 12.5 percent claims rate in a recent BIPA settlement against a payroll vendor, ADP, and even the "impressive" claims rate of approximately 22 percent in the recent Facebook BIPA settlement. Ex. 2, Flowerree Decl. ¶ 14.

## IV. Class Counsel are Entitled to Payment of Their Reasonable Attorney Fees

### A. The Court Should Award Attorney Fees as a Percentage of the Fund

The Court should award attorney fees as a percentage of the settlement fund made available to the class members. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of common fund "entitles [counsel] to a share of that benefit as a fee"). This is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)); *Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014); *see also Boeing*, 444 U.S. at 478.

Although there are two ways to compensate attorneys for successful prosecution of

statutory claims – the lodestar method and the percentage of the fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994) – the favored approach in the Seventh Circuit is to use the percentage of the fund method in common fund cases like this one. "Our court of appeals favors the percentage-of-the-fund fee in common fund cases because it provides the best hope of estimating what a willing seller and a willing buyer seeking the largest recovery in the shortest time would have agreed to *ex ante.*" *In re FedEx Ground Package System, Inc. Employment Practices Litig.,* 251 F. Supp. 3d 1225, 1236 (N.D. Ind. 2017) (citing *In re Synthoid Mktg. Litig.,* 325 F.3d 974, 979-80 (7th Cir. 2003)); *see also McDaniel v. Qwest Commc'ns Corp.,* No. 05 C 1008, 2011 WL 13257336, at *3 (N.D. Ill. Aug. 29, 2011) ("Many courts have found the percentage-of-recovery method provides a good emulation of the real-world market value of attorneys' services provided on a contingent basis.") (Pallmeyer, J.).

It is especially appropriate to use a common fund approach in cases based on fee shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . . ." *Skelton*, 860 F.2d at 256; *accord Florin*, 34 F.3d at 564. Here, the Settlement releases Class Members' statutory claims for fees under BIPA. *See* Ex. 1, Settlement, § IV.3.

There are several other reasons that courts in the Seventh Circuit favor the percentage of the fund method. First, the percentage of the fund method promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful churning of the file to increase their billable hours. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 789-90 (7th Cir. 2001). Where attorney fees are limited to a percentage of the total, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *see also In re Amino Acid*

5

*Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation . . . a fee based on a percentage of recovery . . . tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest").

Second, the percentage method preserves judicial resources because it saves the Court from the cumbersome task of reviewing complicated and lengthy billing documents. *Florin*, 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration"); *Gaskill*, 942 F. Supp. at 386 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (fee requests "should not result in a second major litigation")). Courts in this district routinely apply the percentage method to common fund settlements and have noted the advantages of this approach. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *Gaskill*, 942 F. Supp. at 386 (describing advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making). As the Second Circuit has explained, the "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) (citation omitted).

    **B.**    **Analysis of the Market for Legal Services Supports Plaintiffs' Request**

In deciding the fee award in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton,*

504 F.3d at 692-94 (quoting *In re Synthroid Mktg. Litig.,* 264 F.3d at 718)). The Seventh Circuit has held that "[a]lthough it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. Aon Corp.,* 415 F.3d 597, 599 (7th Cir. 2005).

The percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *Kirchoff v. Flynn,* 786 F.2d 320, 324 (7th Cir. 1986) ("[w]hen the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original). In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Id.* at 325.

It is for these reasons that the percentage-of-the-recovery approach makes the most sense for this case and has been used in most BIPA class action settlements. *See* BIPA Settlement Chart, *infra* at 10-11 (all awarding comparable or higher fees based on a percentage of the settlement fund).³ As such, this Court should apply the percentage-of-the-recovery method.

Here, prior to filing the Complaints, Settlement Class Counsel executed a fee agreement with the Settlement Class Representatives that entitled Settlement Class Counsel to attorney fees equal to forty percent of any recovery. Ex. 4, Fish Decl., ¶ 11-12. The Court, therefore, knows the amount the Settlement Class Representatives and Settlement Class Counsel negotiated for in the marketplace. Because the Parties negotiated an attorney fee arrangement at the start of the

---

³ Indeed, Settlement Class Counsel are unaware of any recent BIPA class action settlement where a court awarded fees based on the lodestar method instead of the percentage method. Ex. 2, Flowerree Decl. ¶ 15.

litigation, the presumption of market-rate reasonableness applies. *See Briggs v. PNC Financial Services Group, Inc.,* No. 1:15-cv-10447, 2016 WL 7018566, at *4 (N.D. Ill. Nov. 29, 2016). Consistent with the fee agreement, Settlement Class Counsel are voluntarily seeking one-third of the common fund, minus settlement administration costs of $56,670 and the Class Representatives' requested Service Awards of $10,000 each. *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) (recognizing that settlement administration costs are not a benefit to the class and generally should not be included when calculating class counsel's fee). This percentage is consistent with the low end of standard contingent fee awards in the Northern District of Illinois. *See Dobbs v. DePuy Orthopaedics, Inc.,* 885 F.3d 455, 459 (7th Cir. 2018) ("The typical contingent fee is between 33 and 40 percent") *citing Gaskill v. Gordan,* 160 F.3d at 361, 362 (7th Cir. 1998); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP,* No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingency fee ranges from 33 1/3% to 40% of the amount recovered)*; In re Diary Famers of Am., Inc.,* 80 F. Supp. 3d 838, 845 (N.D. Ill. 2015) (the usual range of contingent fees is between 33 and 50 percent); *McDaniel,* 2011 WL 13257336, at *4 ("[T]he real-word market range for contingent fee cases is 33% to 40%.") (Pallmeyer, J.).

      **C.**      **The Risk of Non-Payment Supports the Requested Attorney Fee Award**

Settlement Class Counsel's decision to seek the market rate is also reasonable in light of the significant risks of nonpayment that Settlement Class Counsel faced. At the outset of the litigation, Settlement Class Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Settlement Class Representatives. *Taubenfeld,* 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees).

Settlement Class Counsel took this case on a contingent fee basis and assumed the risk that

they would receive *no* fee for their services. Ex. 4, Fish Decl., ¶ 12; *see Sutton*, 504 F.3d at 693-94 (7th Cir. 2007) ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Here, Settlement Class Counsel faced risk of no recovery. In particular, Defendant could have defeated liability based on several defenses: (1) that the Workers' Compensation Act preempts employment-based BIPA claims;[4] (2) that Defendant's timekeeping system did not collect biometric data covered by BIPA (a likely subject of future expert testimony); (3) that Defendant's alleged violations of BIPA were not "negligent" or "reckless," a prerequisite to recovery of monetary damages; and (4) that damages under BIPA are discretionary based on the word "may" in the remedies section of the statute, 740 ILCS 14/20, and that the Court would decline to award damages (or greatly reduce them) because Defendant's biometric technology allegedly posed no risk of harm to Settlement Class Members. And even if Plaintiffs prevailed on these issues, they risked recovering money for a much smaller class if Defendant prevailed in demonstrating that a one or two year limitations period, instead of a five-year period, applied to BIPA claims.[5] There is limited authority on any of these issues and so the litigation would have been protracted and expensive. Ex. 2, Flowerree Decl., ¶ 17. Given these risks, Settlement Class Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.).

---

[4] An issue currently on appeal before the Illinois Supreme Court. *McDonald v. Symphony Bronzeville Park, LLC*, Case No. 126511 (Ill.) (petition for leave to appeal accepted on January 26, 2021).

[5] An issue currently on appeal before the Illinois Appellate Court. *Tims v. Black Horse Carriers, Inc.*, Case No. 1-20-0563 (1st Dist).

D. The Benefits Conferred Upon Class Members Justify the Requested Award

The benefit the Settlement provides Settlement Class Members is excellent: over $900 net per Settlement Class Participant with a 35 percent claims rate or nearly $800 net per Settlement Class Participant with a 40 percent claims rate. Ex. 2, Flowerree Decl., ¶ 12. This net per Settlement Class Participant recovery is only a 10-20 percent discount on the $1,000 per person recovery Plaintiffs could have obtained if they proved a class-wide negligent violation of BIPA at trial, after years of additional litigation. 740 ILCS 14/20(1). The per-Settlement Class Member amount compares favorably to other BIPA settlements that have received final approval:

**BIPA SETTLEMENT CHART**

| Case | Judge | Class Size | Per Class Member | Attorney Fees | Service Award |
|---|---|---|---|---|---|
| *Kusinski v. ADP, LLC*, 17-CH-12364 (Cook Cnty. Feb. 10, 2021) | Atkins | 320,000 | $250 net per claimant with 20% claims rate[6] | $8,750,000 (35% of settlement fund) | $7,500 for each of three class representatives |
| *Prelipceanu v. Jumio Corp.*, 18-CH-15883 (Cook Cnty. July 21, 2020) | Mullen | Thousands[7] | $262.28 net per claimant[8] | $2,800,000 (40% of total settlement) | $10,000 |
| *Jones v. CBC Rest. Corp.*, 1:19-cv-06736 (N.D. Ill. Oct. 22, 2020) | Alonso | 4,053 | $800 gross | $1,054,966 (32.5% of total settlement) | $7,500 |

---

[6]  The actual claims rate in *ADP* was only 12.5 percent, almost one-third of the current claims rate here, so the ultimate net per claimant amount in *ADP* was above $250.

[7]  The settlement documents do not reveal the precise number of class members, but the settlement approval documents state that "thousands" of claims were filed.

[8]  The Parties' settlement agreement and filings did not disclose the number of class members in this $7 million settlement or the ultimate net per person recovery. Class Counsel's fee petition represented that "thousands" of class members had filed claims. Legal websites state that class members who submitted claims received up to $262.28 per person. *See* https://topclassactions.com/lawsuit-settlements/lawsuit-news/illinois-jumio-biometric-class-action-settlement/ (last visited Aug. 23, 2021).

10

| Case | Judge | Class Size | Per Class Member | Attorney Fees | Service Award |
|---|---|---|---|---|---|
| *Diaz v. Greencore USA – CPG Partners, LLC*, 2017-CH-13198 (Cook Cnty. Aug. 30, 2019) | Valderrama | 8,194 | $696.27 gross | $1,901,750 (1/3rd of total settlement) | $15,000 |
| *Dixon v. The Wash. & Jane Smith Home*, 1:17-cv-8033 (N.D. Ill. Aug. 20, 2019) | Kennelly | 1,378 | $1,085.00 or $768.00 gross[9] | $451,548 (1/3rd of total settlement) | $10,000 |
| *Marshall v. Life Time Fitness, Inc.*, 17-CH-14262 (Cook Cnty. July 30, 2019) | Tailor | 6,000 | $270 net per claimant[10] | $800,000 (1/3rd of total settlement) | $5,000 |
| *Zhirovetskiy v. Zayo Group, LLC*, 17-CH-09323 (Cook Cnty. Apr. 8, 2019) | Flynn | 2,200 | $450 gross | $407,256,17 (40% of total settlement) | $10,000 |

Nor will Class Members be required to provide a general release of BIPA claims to participate in the Settlement. While the Settlement Class Representatives will provide Defendant a general release in exchange for their Service Awards, the other Settlement Class Members who do not timely exclude themselves from the Settlement will provide Defendant with a release limited to claims arising out of the allegations in the Second Amended Class Action Complaint. Ex. 1, Settlement, § IV.3.b-c. The absence of a general release exemplifies the results achieved for Class Members. *See Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091, 1103-04 (D.N.M.

---

[9] A total of 837 class members in the potential two-year potential limitations period received the larger number ($1,085.00) and a total of 541 class members outside of the potential two-year but inside the potential five-year limitations period received the smaller award ($768.12).

[10] The settlement also included dark web monitoring the parties valued at $130 per class member.

11

1999) (noting the limited, rather than general, release as further evidence of an exceptional result in favor of class members).

### E. The Attorney Fee Request Satisfies the *Redman* Ratio Test

In 2014, the Seventh Circuit considered class action settlements with very low class member participation that were negotiated under questionable circumstances, and where only the parties and lawyers (not class members) were to benefit from the proposed settlements ("the Consumer Cases"). *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014), 781-82; *Redman,* 768 F.3d at 630; *Eubank v. Pella Corp.*, 753 F.3d 718, 726 (7th Cir. 2014). In each of the Consumer Cases, the class recovery was miniscule, the claims process was designed to discourage class participation, the claims rate was exceedingly low, and there were other indicia that class counsel had sold out the class in furtherance of class counsel's pecuniary interests. This Settlement stands in stark contrast to the Consumer Cases. It provides an outstanding result to Settlement Class Members, as described above in Sections III. and IV.D.

Based on the facts of the Consumer Cases, the Seventh Circuit instructed the district courts when approving settlements to examine the ratio of the fee requested to the fee plus what class members received (the "*Redman* Ratio test"). *See Redman*, 768 F.3d at 630; *accord Pearson,* 772 F.3d at 781-82. Under the *Redman* Ratio test, the "ratio that is relevant" in determining reasonable attorney's fees "... is the ratio of (1) the fee to (2) the fee plus what the class members received" and the "attorney's fees awarded to class counsel should not exceed *a third or at most a half of the total amount of money going to class members*." *Redman,* 768 F.3d at 630 (emphasis added); *Pearson,* 772 F.3d at 781-82. Settlement Class Counsel is seeking $1,777,110 in attorney fees. The

ratio here is 33.33% ($1,777,110 fee / $5,331,330[11] fee plus amount payable to class), which falls well within the permissible *Redman* Ratio.

      **F.**      **Class Counsel's Fee Request Is Reasonable and Should Be Approved Without a Cross-Check**

Settlement Class Counsel's fee request should be approved because it is reasonable based on the market rate. No further showing or analysis is needed. *In re FedEx Ground Package Sys., Inc. Employment Practices Litig.,* 251 F. Supp. 3d at 1243 ("A lodestar cross-check … isn't encouraged in this circuit."); *Wright v. Nationstar Mortgage LLC,* No. 14 C 10457, 2016 WL 4505169, at *17 (N.D. Ill. Aug. 29, 2016) (courts can skip a lodestar check); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 n.27 (N.D. Ill. 2011) ("use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive"). This is because the recovery for Settlement Class Members is substantial, the entire Net Settlement Fund will be distributed to Settlement Class Members who submit valid claims, and the settlement does not present indicia that it was the product of collusion between the Parties at the expense of Settlement Class Members. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("consideration of a lodestar check is not an issue of required methodology"); *In re Dairy Farmers of Am.*, 80 F. Supp. 3d 838, 850 (N.D. Ill. 2015) ("For attorneys who are arguing for a percentage-of-the-fund fee award, any delineation of hours is seemingly unnecessary . . . ."). Although courts occasionally review counsel's lodestar as "a cross-check to assist in determining the reasonableness of the fee award," *Heekin v. Anthem, Inc.*, No. 05 Civ. 1908, 2012 WL 5878032, at *2 (S.D. Ind. Nov. 20, 2012), the lodestar cross-check is of limited utility because "[u]ltimately

---

[11]     The denominator here excludes settlement administration costs and Service Awards, but not litigation costs. *See Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 200 and n. 5-6 (N.D. Ill. 2018) (Chang, J.) (similar calculation excluded $298,321 in settlement administration costs and a $10,000 incentive award in the denominator, but not $52,458.90 litigation costs).

13

. . . the market controls," *In re Trans Union Corp. Privacy Litig.*, No. 00 Civ. 4729, 2009 WL 4799954, at *9 (N.D. Ill. Dec. 9, 2009); *Wright,* 2016 WL 4505169, at *17 ("Nor the is the lodestar an accurate representation of the hypothetical market agreement between the plaintiffs and their attorneys"). As explained above, because Settlement Class Counsel's substantial work has "bought" a significant recovery for Settlement Class Members, the Court need not analyze Settlement Class Counsel's lodestar.

## V. The Payment of Class Counsel's Litigation Expenses are Appropriate

The Settlement provides that Settlement Class Counsel may apply to the Court for payment of litigation costs of up to $55,000. Settlement Class Counsel seek reimbursement of actual costs in the amount of $28,249.66, including for the filing fee, service of process fee, mediation fees, deposition transcript fees, electronic research fees, document review hosting fees, and consulting expert fees. Ex. 2, Flowerree Decl. ¶ 19; Ex. 4, Fish Decl. ¶ 13. Settlement Class Counsel's request for these costs from the Gross Fund is appropriate, as these costs were necessarily incurred in order to litigate and settle this case. Ex. 2, Flowerree Decl. ¶ 19.

## VI. Payment of the Settlement Administrator's Costs Are Appropriate

Analytics Consulting, LLC ("Settlement Administrator") has administered the Class Notice process and will administer the remainder of the Settlement. Plaintiffs request that the Court award the Settlement Administrator its estimated expenses of $56,670. Ex. 2, Declaration of Due Diligence, ¶ 13.

## VII. Payment of the Service Awards Are Appropriate

Consistent with the Settlement Agreement and Class Notice, the Settlement Class Representatives request Service Awards of $10,000 each from the Gross Fund. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016

14

(7th Cir. 1998) (affirming $25,000 incentive award). "In deciding whether such an award is warranted, relevant factors include [1] the actions the plaintiff has taken to protect the interests of the class, [2] the degree to which the class has benefitted from those actions, and [3] the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.*

The Class Representatives pursued this case in their own names and on behalf of the proposed class. In doing so, the Class Representatives accepted a risk of retaliation from future potential employers who can easily identify them through a Google search as the lead plaintiffs in this lawsuit against a previous employer. In addition, each of the Settlement Class Representatives answered written discovery and sat for a deposition. Finally, the Settlement Class Representatives will provide a general release as additional consideration for their Service Awards, which is another reason to approve that award. Ex. 1, Agreement, § IV.3.c.

Service awards of $10,000 or more are regularly approved by Illinois state and federal courts in BIPA cases, often in smaller settlements than this one and where the named plaintiffs did not sit for depositions. *See* BIPA Settlement Chart, *supra* at 10-11. So too here the Court should award the Class Representatives $10,000 Service Awards.

**VI.   Conclusion**

Settlement Class Counsel's request for attorney fees is reasonable based upon the fee agreements in this case, the normal rate of compensation in similar cases, the risk Settlement Class Counsel undertook in engaging in this litigation, and the excellent result achieved. Plus, the *Redman* Ratio is well-within the applicable range. Therefore, the Court should award Settlement Class Counsel attorney fees of $1,777,110, litigation costs of $28,249.66, the Settlement Administrator's costs of $56,670, and the Settlement Class Representatives' Service Awards of $10,000 each.

Respectfully submitted,

Dated: September 3, 2021

/s/Zachary C. Flowerree
*One of the Attorneys for Plaintiffs and Settlement Class Members*

Douglas M. Werman
dwerman@flsalaw.com
Zachary C. Flowerree
zflowerree@flsalaw.com
**WERMAN SALAS P.C.**
77 W. Washington St., Suite 1402
Chicago, IL 60602
Tel: (312) 419-1008
Fax: (312) 419-1025

David Fish
dfish@fishlawfirm.com
Mara Baltabols
mara@fishlawfirm.com
**FISH POTTER BOLAÑOS, P.C.**
200 East 5th Avenue, Suite 123
Naperville, IL 60563
Tel: (630) 355-7590

*Attorneys for Plaintiffs
and Settlement Class Members*